Thank you, your honor. May it please the court. My name is Dwayne Frizzell and I represent the appellants Alexander and Jackson Young. And I'd like to thank judges Christian and Calkins and Dreissner for being here today. And I've been watching some of the oral arguments this weekend. I know that, Kristen, if you'd like for the attorneys to state their strengths and the weaknesses, even though they don't necessarily like to do that. So with the court's permission, I would like to proceed in that order. The strengths here are that the summary judgment evidence really do support our claims for the defamation-based, for defamation-based damages or the defamation-based claims. Now both in terms of direct defamation from Romantic Times and Kathryn Falk, and also indirect or rather conspiratorial defamation in connection with Gracie Wilson. I'll speak to the direct defamation at this time. In her suite at the 2016 Romantic Times Convention here in Las Vegas, Kathryn Falk made specific comments to very prominent people in the romance literature industry about Randy Jackson and about Randy Alexander and Jackson Young. She said, first of all, that they were more than court businesses, the innuendo clearly being that they were romantically involved. She said that... Why is that clear? I'm sorry? Why is that clear? Why is that the conclusion from that statement? Well, Your Honor, the innuendo... Well, first of all, I mean, a jury could maybe conclude that it's not. But I will say for summary judgment purposes here, when you have the question being, why is Randy Alexander supporting Jackson Young and his business enterprise? And that they're not just business partners, but what kind of partners would they be? I mean, the only innuendo, especially in a romance novice convention, would be that they were romantically involved. Other statements that were made is that... And again, you know, maybe the jury would come to a different conclusion, but I think that that's an issue for the jury to decide. How is that defamatory? That they're having a romantic... Well, first of all, Randy Alexander is married. Secondly, you know, defamation per se is for... That's one of the classic cases for defamation per se is when a statement goes to inappropriate, quote unquote, sexual conduct, which historically would include, you know, not being faithful to one's spouse. Counsel, I was... Here's what I thought your strongest argument was. So I think that there are... Opposing counsel has strong arguments as to several of your claims. You got a whole lot of claims for sure. But could you focus... When you're talking about the defamation claims, it seems to me, particularly if we're talking about defamation per se, what about the allegations that they were extorting people, blackmailing people? Yeah. Isn't that your strongest argument? I think that... I think actually that and sending sexting, quote unquote, inappropriate sexting messages that Jackson Young was sending such messages to Gracie Wilson and to other authors. Gracie Wilson said that she had such messages, but she couldn't produce them. She said that she sent such messages to Catherine Fox, but Catherine Fox couldn't produce them. And oh, by the way, if she had received them, they could never be retrieved because her email accounts and everything else has been obliterated. And only some guy in China that you could identify would have the information about it. So what are your strongest claims? Defamation per se because of the allegation of blackmail? Yes. And also for the sexting, Your Honor, because if we look at the... And I know that I understand. I saw the look on your face and I understand that in the normal context, it might be hard to say, well, why is the sexting message defamation per se? And I would say that, one, it goes to inappropriate sexual conduct allegations. But also here, given the unique business model that Alexandra and Ted, I mean, we're talking about a cover model on a romance book. I mean, who would want to buy a book with a predator on the book? Wait, now you're using the word predator. So hang on. The allegation that he sent inappropriate messages, I think is a very heavy lift for you. Did they say sexting messages as Yes, they did, Your Honor. Sexting messages were what Gracie Wilson specifically said in her post. Okay, so I'm not sure I know what that means. I can imagine what that means. And sometimes that includes photographs, but I didn't see any allegation of a photograph being texted. Is that right or absent? Just inappropriate and sexting. Is that right? Yes, Your Honor. And later on linking that with him being a predator. So I mean, remember, these all were. The word predator, that's different. I'll grant you that's quite different. And I put that in the category of potentially actionable along with the allegation of blackmail and being a predator. I agree with particularly in his professional community, perhaps. How would that sound? Would that sound in false light? Or what's your theory with that? Well, I think it sounds in defamation per se, because it goes to fitness or the ability to perform his duty as or in his profession as a model and entertainer and someone who in this business model is going to be actually the personification of an actor or a character in a book. Where are you connecting Ms. Fulk to Ms. Wilson's behavior? Thank you very much, Your Honor. And that, I think, Your Honor, is where you have to look at the motive, the means, the opportunity, the chronology and the spoliation. All of those tie in. And let me explain. If you look at the chronology here, we see that Gracie Wilson had a verbal altercation with Jackson Young minutes before a meeting with Catherine Fulk and the prominent people in her suite. In the suite, Catherine Fulk starts talking about Gracie Wilson. And then it goes further in that after the convention, Randy Alexander wanted to speak with Catherine Fulk because of these allegations that were coming out and Catherine Fulk refused, even though Catherine Fulk in her deposition said that if someone, a model per se, were to have any problems at a convention that she would go to the author to talk to them. She not only did not go to Alexander, she refused to meet with her. But she sure did look up Gracie Wilson wanted to speak with her. And the day before, this is probably the most important piece of evidence here. The day before Gracie Wilson made her post, she was on the phone with Catherine Fulk. Can I just, can I, could you forgive me for interrupting? I just want to make sure I've got this chronology straight because it took a while. Yes, ma'am. Is it correct, your allegation is that May 2nd, Ms. Wilson posted that Young was a predator. That on May 3rd, Ms. Bamford posted that a certain cover model from the group was, because of allegations of abuse and blackmail, was not going to be permitted. And then on May 3rd, there's the statement Fulk stated that JY is banned from any RT events. I think during the course of this chronology, your briefing says that in the district court, there was a mistake by actually by a whole year. So these happened May 2nd, 3rd. Actually, I think May 2nd and May 3rd within a couple of days, not within 12 months of each other. But that's the sequence. Is that right? Yes, ma'am. This was about two weeks after the convention on May 2nd. Gracie Wilson made her first post alleging to an and all of that. And that included that he was a predator. That came the next day in that same thread. And like on Facebook, people make comments. Okay, I'm going to take that as a yes. Okay. And then other people jumped in. I just really have to get the facts. And it's kind of, it's not that easy in front of the briefing. And after her post, and I agree that there's this thread and other people jumped in, thanking them for standing up for the group and whatnot. Yes. There are two Facebook posts. One is on Gracie Wilson's own page and the other is on a Romantic Times own page. On Gracie Wilson's own page on May 2nd, she posts that there's a model that had been abusive on the threads and that post on May 3rd. She states that Jackson Young was a person that he was a predator. On that same day, on that same day, on the Romantic Times own Facebook page, the RT administrator states because of allegations of abuse and blackmail, that a certain model was going to be banned. A commentator says, who should I avoid? And the on that same thread on that same day, Catherine Falk personally says Jackson Young is banned. And then the commentators all praise Gracie Wilson and Catherine Falk for exposing Jackson and making it public. Okay. So could you get circle all the way back to Judge Gritzer's question? I think that it's very helpful to me that these were not all in one string. And I thank you for clarifying that. But I think the question had to do with Ms. Wilson and you started by saying that you thought that she had committed defamation and there was a conspiracy. So could you circle back to that? First of all, we have to look at a motive. The motive here was that Catherine Falk was obsessed that Randy Alexander and Jackson Young were basically taking their business elsewhere. They had entered into a nondisclosure agreement with Ashley Martinez, who was a worker for our Romantic Times. And they were working with her in terms of developing their business. Days after that, not NDA was signed days. Catherine Falk gets word that Jackson and Randy are going to go to a competing convention. And that's when Falk sent Jackson the text that said, bow out of that convention or get your name sullied. I don't want you to run out of time here. And my problem is, you're throwing a lot of assumptions at me. And I'm trying to figure out where your evidence is that connects Ms. Falk to these representations. And I'm having a hard time finding that. And so I need your help with that. And I don't need assumptions from what you're suggesting is motive because people have lots of bad motives, but they don't do anything about it. So you got to connect something beyond what you think she might have wanted to do. So help me with that. Where's your evidence? The evidence is one that Catherine Falk was on the phone with Grace Seussville from the day before she posted content on Facebook, and in fact, showed Catherine Falk specifically what she was going to post. Now, they communicated with each other with text and emails that would clearly tell us what they were talking about. These emails would say, according to Falk, she was saying, oh, you know, you're going to get in trouble if you post that. We believe that those emails would show that they were working together to get this post. The emails have been destroyed. The defendants have destroyed these emails. There's an issue of spoiliation, and it goes to the heart of your honor's question, going to where is the connection? Well, the connection is that they were talking to each other on several occasions. Falk was well aware of the post that was made. She had a motive to take them down. And when push comes to shove, and we want to see the actual communications that Falk and Wilson had with respect to the post, they're conveniently gone. So I hope that answers your question. Do you want to save some time for rebuttal? I would, your honor, please. We'll hear from opposing counsel. Thank you, your honor. I'm Alan Westbrook. I represent Ms. Catherine Falk in Romantic Times. In this matter, I don't represent, obviously, Gracie. In our position, I think the court has kind of pointed to what our issues have been throughout the litigation, which is whenever we would ask what specific statements were made by my client regarding what defamation there would be, and really all of these causes of action kind of stem from a couple of statements that they put in their chronology. We weren't able to get those clearly. But what about, it seems to me that once we get the chronology straight, that on May 2nd and May 3rd, in this same professional group, very contemporaneously, Mr. Young's accused of being a predator, and there's a statement that both of them were blackmailing people within the professional community. What about those two claims? Well, I guess, first of all, none of those things were stated by either of my clients. The only thing that could possibly be attributed to my client is that the administrator for the company had been banned because they had received complaints regarding his actions and blackmail. Well, wait a minute. Hold on. Before you go past that, please, because for me, this is why the context is so important. I think the law is pretty clear. We have to recognize these statements are made in context. It is part of an opposed, just sort of an electric conversation to the same professional group. At least that's the opposing counsel's best argument, it seems to me. In that context, right after him being called a predator, there's this allegation of blackmail, which, after all, sounds pretty defamation, per se, like to me, then there's an immediate response that he's banned. So, in context, why isn't that at least false light, sir? Well, Your Honor, I suppose it's not false light, we would argue, certainly, is because we are responding. My client is involved in the customer service arena. I mean, she is involved in bringing people to these conventions. She testified that whenever there are complaints regarding any aspect, she has to take it seriously. When these complaints regarding Mr. Alexander did come, there were multiple people who said they did not want to come back to the event, so she had to address those. So, when they received the statement by that Mr. Young was sending her texts about whether she shaved her private parts, I think that's the reference that they had regarding an inappropriate that you had asked about before. She stated that he had asked her about that. She stated that he was threatening to ruin her reputation, unless she dealt with him so that he could get royalties from her books. That, I think, could be interpreted by individuals as being blackmail. Either you go along and take me on as a partner and pay me royalties, or I'm going to ruin your reputation. And based upon those, among other complaints that they had received regarding the actions of Mr. Alexander, at that point in time, they made a decision that they would remove him and not invite him back to the event. Based upon the statements of other individuals, my client was never stating that he was blackmailing. In fact, she testified that she did not believe that he was blackmailing. However, excuse me, sir, but you keep saying it's based upon statements by others, but I think that's one of his arguments, right? You couldn't remember any of the people who made that statement and those statements, and all the emails have been destroyed. Is that right? Well, the email aspect wasn't brought up until after this appeal took place. So, during the discovery process, I've not gone back in to look on the email aspect of this. This wasn't brought up in the motion. What do you mean? Didn't your client testify that her email was, there's only one guy in China who would know what happened to her email or something like that? Do I misunderstand the record on that? I don't believe you misunderstand the record. But the context of the question was, what's the status of the business? She shut the business down. She's an octogenarian. Right after that, I believe this was the last event that she was putting on. There might have been one other after this that had already been set up. But in the company, I don't have any of the computers anymore. And I think the comment regarding the person in China was more of a, she believed that this was maybe in the cloud someplace. She didn't know where those were. So, it was not in the context of we want to get emails from between you and she. It was in the context of what's going on with the business at the moment. All right. So, getting back to your point that your client was responding to customers who were concerned and upset and didn't want. And my understanding is, as you've indicated, that the sexting messages were the content you mentioned, but no photos. Is that right? That is correct, Your Honor. I don't know where the sexting reference came in. I don't see that in the record anywhere. There was a complaint of an inappropriate, and that's what I'm referring to is that post where she said that she had asked about. I think we're talking about the same thing. And so, one other follow-up question is, your client wasn't able to remember the names of any patrons who had complained and said they didn't want to come back. Is that correct? That's correct, Your Honor. Ms. Falk had run the Romantic Times Convention for several years. She has a suite, which is kind of a welcoming suite. Many authors, there are hundreds of authors and writers at the event. And in her testimony, there were a number of people that came to her, including Gracie Wilson, after this interaction of the evening before where she said that she was physically grabbed and verbally assaulted by Mr. Young. There were other individuals that came with her. She didn't write down the names of those individuals. They just happened to be with Gracie when they came up. And so, she didn't write down the names. She was just kind of taking in the information as these people were coming in. Thank you. My colleagues have other questions. Mr. Westbrook, I'm curious about the one Facebook post that we can connect to your client, and that is the one that suggests that he would be banned from further events. Now, that may just be true, but the use of the term banned has a pejorative sound to it. How do you respond to that? Well, I suppose anytime you're not allowing somebody to come back, I suppose somebody can take a negative assumption from that. But I don't believe that it arises to defamation. They received complaints. She was merely stating a fact that he would be banned. He would not be allowed back at the events as things stood at that time. Is this an invitation-only situation? Well, he was a model who would be sponsored by a writer to come, or he can request to come if some kind of event for models, or he could join as just a writer or somebody who wanted to meet a writer. So coming to the event isn't necessarily an invitation only. But if you wanted to come to an event as a model that is sponsored by a writer, then the writer would have to sponsor you. I'm just trying to get a concept of what banned can possibly mean. She doesn't have the force of a public facility, but she's basically saying you wouldn't be welcome and we wouldn't invite you. Is that essentially it? That is correct, Your Honor. You would not be part of any of their official events. To the convention or to the welcoming event in the room? To the convention. Because the actual events that he took that were complained of weren't in the suite. They were actually elsewhere within the convention environment. Counsel, was Ms. Burke deposed? Ms. Burke? Yes. My understanding is that Alexander testified that Burke relayed these comments that she was in the suite and heard Ms. Falk make the allegation personally, not just online, but personally make the allegation to those present to the effect that the plaintiffs were engaged in blackmail. What about those comments that were made to that professional community? And I think that's again one of the issues that we've had throughout this. There have been allegations that certain people have heard certain things. I believe that Ms. Alexander wrote in a and then we went and deposed those people and they disagreed that that's what they had said. That's why I asked her if Burke was deposed because 922 is Alexander recounting this. Is that a disputed issue of fact then? Did Alexander say she said it and Burke said she she told you Jackson Young was sending inappropriate text to authors, correct? And her response was, I believe that she mentioned it as part of one of the things that she had heard. She didn't say he was doing it though. I mean, that's that's her test. Is that Burke or is that Alexander? That's Burke's testimony. Right. So why isn't that a dispute of fact? Alexander testified to the contrary. Burke told that Spock had made this statement, an allegation of the both of them, Jackson Young and Randy Alexander were engaged in blackmail. Well, I suppose that argument is inadmissible because it's hearsay. Ms. Burke denies that she said that. And the only thing that we have from Ms. Alexander is a notebook that's fairly self-serving, saying that different people told her different things. But even in the case, the statements that I don't remember what it is specifically that she said was told. But what she said was there were inappropriate texts and that's backed up by Jackson Young and his business partner, Randy Alexander, were having an illicit affair and Jackson Young was blackmailing his business partner, Randy Alexander, to keep their business partnership going with threats of bringing the affair to Randy Alexander's husband. That's 922. So that's what I'm trying to get at. Did the district court rule on that alleged comment? Is it not allowed because of hearsay? What happened in the district court vis-a-vis that statement, the blackmail allegation? I don't believe she concluded that there was, um, you're saying, I'm sorry, I'm confusing two things. You're talking about blackmail or you're talking about an illicit affair? I'm talking about blackmail. I'm not talking about an illicit affair. Okay. Um, I believe that what the court concluded in the, in the order that there was no statements that were made or are admissibly, uh, made, uh, by Ms. Fogg or Romantic Times that were mounted to blackmail. Isn't it also correct that Ms. Alexander was not in the room and never spoke with her? She was not in the room when the statements were made. That is correct. Well, but, but I'm sorry. She spoke to Burke. That's she's, they both agree that they were made by Ms. Fogg. Okay. So, and, and you think that the district court chose to deem those statements admissible on hearsay grounds? Is that right? I don't believe she made a determination that it was, it was, uh, I don't think there was a specific determination that it was hearsay. She just didn't, she didn't say whether she just, uh, considered, she just said the statements that had been provided by plaintiff did not amount to blackmail. Thank you. Judge Hawkins, do you have any, oh, go ahead. I was just going to ask if you have further questions. Yeah. I was just going to ask, is Bethany Burke also Ann Wilson? Aren't they, isn't that the same person? Yeah. That's why I had to check my notes when you're saying, because they write under pseudonyms. I'm trying to keep who, who is, who is straight with who, but you're correct, sir. Thank you. Judge Hawkins, anything further? No. Judge Davidson, anything further? I don't think so. Thank you. Okay. Thanks very much. Council. Thank you, your honor. You're welcome. Any rebuttal? Yes, your honor. Uh, talking to the black mailed point. Um, yes, Bethany Burke, who's also known as Ann Wills. Um, and the other person is Anna Christelle, who's also Marla Williams. I know it gets confusing, but they were both deposed and they both said that Catherine said these things in the context of rumors. And in fact, even Catherine Falk took by the yes, I heard rumors, uh, to the effect that they were being blackmailed on the RT post. So remember this is the RT very own Facebook page preparing for the next convention in 2017. It specifically says from the RT administrator that there were multiple allegations of blackmail and abuse that's in black and white on the RT's own website. So I think it's very clear that the blackmail was out there and was being fed in terms of any inadmissibility. Your honor, no objections were made. Uh, and under the rule 56, if, if a posting council had issues with any evidence, he needed to make those objections then and there, he didn't make any objections. And I would also say, we're not bringing them in as hearsay because we're not trying to say that any of these things are true. In fact, we dispute them. Um, but I would like to say that it's important. Council said that there was nothing really attributable to his own client. And that's just not true. I have to go back again, the Facebook page for romantic advertising is the very next event. And by the way, this is happening just weeks after the 2016 event is saying there's multiple allegations saying that asked who's the one supposed to avoid it? That's the commentator response from Rt Jackson Young. And then later on comes the band comment, Jackson Young and band. And that was directly from Paul. Um, and I think that that's really the important point is that there is black and white allegations of rumors, which never materialized. No one could testify to any rumors that anyone said to anyone made any of these rumors or told Captain Paul, any of these things, except for Gracie Wilson. You don't want to remember Gracie Wilson saying anything. Unless there's any other questions, I've completed my argument. I don't believe there are other questions. Thank you. And thank you both for your arguments today. We'll go ahead and submit this case. And with that, that's our only argument today. So we'll stand in recess. Thank you. This court for this session stands adjourned.
judges: Hawkins, Christen, Gritzner